# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMMALEE DENT,<br><br>  Plaintiff,<br><br>v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS; MARCUS HICKS; VICTORIA KUHN; RYAN VALENTIN; SEAN R. ST. PAUL; LUIS A. GARCIA; ANTHONY J. VALVANO; AMIR E. BETHEA; MATTHEW D. FASCHAN; JOSE M. IRIZARRY; EDDIE MOLINA; JAMES N. COUREY; BRANDON L. BURGOS; DESIREE C. LEWIS; MARIKA A. SPROW; JOHN DOES 1-10 (fictitious names),<br><br>  Defendants. | Civil Case No. _____<br><br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

The Plaintiff, Emmalee Dent, ("Plaintiff" or "Dent") at all material times residing at Edna Mahan Correctional Facility for Women ("Edna Mahan") in Clinton, New Jersey, Hunterdon County, complaining of the Defendants, says:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has supplemental jurisdiction over the state law causes of action under 28 U.S.C. § 1367(a).

2. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events/omissions giving rise to these causes of action all occurred in the District of New Jersey.

## PARTIES

3. Plaintiff was at all material times a resident of New Jersey.

4. New Jersey Department of Corrections ("NJDOC") is a state agency that is responsible for the oversight of New Jersey's State prison system including approximately 13,000 state sentenced people housed across 11 correctional facilities, as well as county jails and community halfway houses. Edna Mahan is one of the State prisons under the NJDOC's direct control and supervision. The NJDOC is being sued pursuant to the New Jersey Tort Claims Act.

5. Marcus Hicks ("Hicks") was at all relevant times the Commissioner of the NJDOC and its policymaker until his untimely resignation on June 18, 2021. Hicks is sued individually.

6. Vitoria Kuhn ("Kuhn") is the Acting Commissioner of the NJDOC and present policy maker. Kuhn is being sued individually.

7. Defendants Ryan Valentin ("Valentin"), Sean R. St. Paul ("St. Paul"), Luis A. Garcia ("Garcia"), Anthony J. Valvano ("Valvano"), Amir E. Bethea ("Bethea"); Matthew D. Faschan ("Faschan"); Jose M. Irizarry ("Irizarry"), Eddie Molina ("Molina"), James N. Courey ("Courey"), Brandon L. Burgos ("Burgos"), Desiree C. Lewis ("Lewis") and Marika A. Sprow ("Sprow") were, at all times in the relevant period, duly sworn officers and/or employees

with the New Jersey Department of Corrections ("NJDOC"). All are being sued individually.

8.   Defendants John Does 1-10, are presently unknown corrections officers, employees, agents and/or representatives of NJDOC whose unlawful actions are described, referenced and/or set forth herein. All are being sued individually.

## CAUSE OF ACTION

### Introduction

9.   During the late evening hours of January 11, 2021, into the early morning hours of January 12, 2021, prison guards at Edna Mahan donned riot gear and beat, pepper sprayed and sexually assaulted a number of female inmates.

10.  Plaintiff was one of the females who was victimized.

11.  When the officers arrived at Plaintiff's cell, they pepper sprayed her for no reason, ripped her shirt open exposing her breasts, assaulted her with battle shields, slammed her against a wall, and punched approximately 28 times for no reason causing serious bodily injury including a concussion and facial injury that required medical attention.

12.  To cover up their illicit conduct the defendants issued perjure laden reports to conceal the incident and their wrongdoing.

13.  Ultimately, defendants' efforts to conceal the incident were thwarted resulting in all the named defendants, other than NJDOC and Kuhn, being charged criminal with charges ranging from Aggravated Assault to Official Misconduct.

**St. Paul & Valentin – Authorizing, Planning and Covering Up**

14. The officers' actions that night were not random or impulsive.

15. Rather, their actions were part of a sinister plan formulated by the highest ranking officials at Edna Mahan.

16. St. Paul was the associate administrator at Edna Mahan and was the highest-ranking NJDOC official at Edna Mahan at the time of the incident.

17. Valentin who was a Major, was the highest-ranking correction officer at Edna Mahan at the time of the incident.

18. St. Paul, along with Valentin, were responsible for ordering, planning, and organizing the cell extractions that led to Plaintiff's injuries and led to the defendants' criminal acts and corresponding charges.

19. St. Paul and Valentin not only planned the illegal attack but were also present as the violence played out.

20. Amazingly, neither St. Paul or Valentin did anything to intervene but instead basked in the glory of their depraved plan.

21. Plaintiff was familiar with St. Paul's penchant for brutality.

22. On, or about, December 22, 2020, approximately two weeks prior, two officers retrieved Plaintiff from her cell and told her that they were taking her for her medication.

23. The officers handcuffed Plaintiff at which point they punched her and pulled her hair before taking her too medical.

24. At that time, St. Paul appeared and informed Plaintiff that is what happens to inmates that lodge complaints against his officers.

25. St. Paul's penchant for mistreatment was also well known to the NJDOC and Hicks.

26. St. Paul has been sued at least three times for excessive force or failing to intervene in other officers abusing inmates.

27. In one case St. Paul is accused of breaking an inmate's arm.

28. In another matter St. Paul is accused of retaliating against an inmate who filed a grievance.

29. St. Paul was also disciplined in 2010 when he was a Lieutenant for violating the State's prohibition against discrimination in the workplace.

30. It goes without saying that St. Paul was a tyrant who never should have been responsible for the sensitive task of managing New Jersey's only female prison.

31. Despite this, the NJDOC and Hicks did nothing to intervene allowing St. Paul to continue his reign of terror with absolute impunity.

32. Not only did St. Paul and Valentin plan, authorize, and witness the attack they also jointly tried to cover up the atrocity.

33. After the incident St. Paul and Valentin intentionally provided their superiors at the NJDOC with false and misleading information regarding what happened to try and sweep the matter under the rug.

### The Extraction

34. Despite being present at Edna Mahan, St. Paul and Valentin did not participate in the actual extraction, assaults, and corresponding violence.

35. Instead, St. Paul and Valentin cowardly put together approximately two dozen officers to carry out the plan.

36. Included in this group were Defendants Garcia, Valvano, Bethea, Faschan, Irizarry, Molina, Courey, Burgos, Lewis and Sprow.

37. Each of these officers were part of the extraction team.

38. Each these defendant officers participated in (1) the assault of Plaintiff; and/or (2) efforts to cover up the assault by issuing false reports; and/or (3) failing to intervene in the assault of Plaintiff and subsequent cover up.

39. Garcia was responsible for punching Plaintiff approximately 28 times for no lawful reason, tearing her shirt open exposing her breasts, and then attempting to cover up his and the other officers illicit conduct by issuing false reports and statements.

40. Lewis was responsible for pepper spraying Plaintiff for no lawful reason before issuing reports which intentionally failed to mention the use of pepper spray as well the other officers' illicit behavior.

41. Irizarry and James both forcibly assaulted Plaintiff with their shields and failed to properly report the incident.

42. Bethea and Valvano were both Sergeants directly supervising the extraction for St. Paul and Valentin.

43. Bethea and Valvano did absolutely nothing to intervene or stop their underling's illicit conduct.

44. Instead Bethea and Valvano did as St. Paul and Valentin required by allowing Plaintiff and other females to be brutalized all to send a message to the ladies of who is boss.

45. Bethea and Valvano then doubled down on their actions when they intentionally lied in reporting to the incident to cover it up.

46. In August, four months before this incident, four lawmakers sent a letter to the NJDOC legal affairs asking the state to look into concerns about Bethea after receiving chilling information from female inmates at Edna Mahan.

47. Unfortunately, the NJDOC and Hicks failed to act on these complaints and warnings further allowing Bethea and his cohorts to continue their reign of terror with impunity.

48. Molina and Burgos were also part of the extraction team and stood by idly while Plaintiff was being victimized before trying to cover up the illegal conduct by intentionally providing false information.

49. Faschan was responsible for recording the extraction and purposely did not record key portions of the other officers' assaulting Plaintiff to cover up their conduct.

50. Faschan later authored a perjure laden police report to further attempt to cover up Plaintiff's brutal assault.

## Injury

51. Immediately after the assault Plaintiff, who was handcuffed, was removed from her cell.

52. Plaintiff plead with the officers to close her shirt so she would not be exposed.

53. Despite Plaintiff's simple request, the officers further demonstrated their depravity by refusing to close Plaintiff's top and instead proceeded to shackle her legs so tight it was nearly impossible for her to walk.

54. The officers then informed Plaintiff that if she did not walk, she would be pepper sprayed until she did.

55. The officers then took Plaintiff to South Hall East where she was stripped of all her clothing and placed in a shower.

56. Plaintiff was then pepper sprayed again in the face for no reason as she lay naked, helpless and injured in a shower.

57. Plaintiff was told to redress herself.

58. Plaintiff, who was suffering in pain and discomfort, pleaded with the defendant officers for medical treatment but instead was thrown in a cell with other females where she ultimately passed out.

59. When a family member learned something had happened, she contacted Edna Mahan at which time Plaintiff was transported to a nearby hospital and treated for a concussion, cervical sprain and other injuries.

60. Plaintiff was also saddled with frivolous administrative charges from the date of the incident.

61. As a result of these administrative charges, which remain open despite being totally unfounded, Plaintiff was denied parole.

62. As a result, Plaintiff continues to be victimized by the NJDOC and Kuhn's untenable and retaliatory policies.

**Aftermath**

63. On February 4, 2021, then Attorney General Gurbir S. Grewal ("Grewal") announced the first round of criminal charges related to the incident.

64. Grewal stated that, "Edna Mahan has a long, ugly history – one that has justifiably attracted scrutiny from county, state and federal investigators.  That's why we must do more than simply figure out what went wrong on January 11.  We must hold the responsible parties accountable, and we must fix the systematic failures that made this incident possible.  I'm committed to using the full resources of my office, and with the assistance of the Hunterdon County Prosecutor's Office, we will tackle this problem head on."

65. Grewal's comments came after the federal Department of Justice issued a scorching 30-page report that concluded that sexual abuse of women prisoners by Edna Mahan corrections officers and staff is severe and prevalent throughout the prison.

66. In June 2021, Governor Phil Murphy, in response to an independent investigation conducted by Lowenstein Sandler, LLP, announced his intention to close Edna Mahan.

67. Governor Murphy's announcement did not mince words exhibiting his disgust with the January 11 attacks as well as his disgust with Edna Mahan's long history of abuse.

68. As a result, Governor Murphy found that the only way to break this pattern of misconduct was to close Edna Mahan and relocate all its female inmates.

## FIRST COUNT

### Cruel and Unusual Punishment
### 42 U.S.C. § 1983 &
### New Jersey Civil Rights Act N.J.S.A. § 10:6-2 *et seq.*

69. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. At all relevant times, all individual defendants were the agents, servants and/or employees of NJDOC and were, at all times, acting in their official capacity as corrections officers within Edna Mahan.

71. Defendants violated Plaintiff's right to be free from cruel and unusual punishment as afforded by the Eighth Amendment of the Constitution of the United States, 42 U.S.C. § 1983, the Constitution of the State of New Jersey and the Law of the State of New Jersey including, but not limited to, the New Jersey Civil Rights Act and the New Jersey Law Against Discrimination by inexplicably assaulting Plaintiff with pepper spray, battle shields and fists and then concocting falsehoods to justify their illegal actions.

72. As a result of Defendants' intentional, wrongful, unlawful and malicious conduct Plaintiff was charged with false disciplinary charges.

73. By reason and/or as a result of Defendants' acts and/or omissions, Plaintiff was caused physical and emotional injury, anguish, and was otherwise injured and/or harmed.

## SECOND COUNT

### Failure to Intervene
### 42 U.S.C. § 1983 &
### New Jersey Civil Rights Act N.J.S.A. § 10:6-2 *et seq.*

74. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75. Each of the Defendant correction officers failed to intervene to prevent the vicious assault on Plaintiff despite having the opportunity to do so.

76. Rather than intervene to stop the attack the Defendants joined the other officers in the savage and unjustifiable assault and then collectively tried to cover up their illicit conduct by issuing false reports and statements.

## THIRD COUNT

### Civil Conspiracy
### New Jersey Tort Claims Act, 42 U.S.C. § 1983 &
### New Jersey Civil Rights Act N.J.S.A. § 10:6-2 *et seq.*

77. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78. Defendants entered into an agreement and/or understanding to assault Plaintiff and a further agreement and/or understanding to cover up their assault by authoring false disciplinary charges and reports.

79. Defendants entered into said agreement and/or understanding for an unlawful purpose and/or to achieve an unlawful purpose by unlawful means.

80. Plaintiff suffered harm, loss and damage as a result of the one or more of the overt acts conducted and/or carried out by one or more of the conspirators in furtherance of the conspiracy.

## **FOURTH COUNT**

**Excessive Force
42 U.S.C. § 1983;
New Jersey Civil Rights Act N.J.S.A. § 10:6-2, et. seq.; &
New Jersey Constitution**

81. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82. Defendants intentionally and/or recklessly used unreasonable and/or excessive force on Plaintiff denying her right to be free from the use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, the Constitution of the State of New Jersey and the Law of the State of New Jersey including, but not limited to, the New Jersey Civil Rights Act and the New Jersey Law Against Discrimination.

83. Under the totality of the circumstances the Defendants' actions were not objectively reasonable, given that Defendants savagely pepper sprayed and beat Plaintiff by punching her and hitting her with shields for no justifiable reason.

84. The conduct of the Defendants occurred while they were acting under color of law and in their official capacities.

85. All of the actions and/or omissions described above were undertaken in a willful and malicious manner with an immoral purpose to injure and/or cause harm to Plaintiff. Defendants are, therefore, liable to Plaintiff for punitive and compensatory damages.

86. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff was humiliated, disgraced, suffered physical and mental anguish and injury to his great detriment.

## FIFTH COUNT

### New Jersey Law Against Discrimination
### Sexual Harassment & Abuse

87. The New Jersey Law Against Discrimination ("LAD") prohibits discrimination and bias-based harassment based on actual or perceived sex.

88. Prisons in New Jersey, like Edna Mahan, are "places of public accommodation" which fall under the purview of LAD.

89. Here, Plaintiff was subjected sexual harassment when her shirt was torn off when the officers initially attacked her, she was further sexually harassed when the officers refused to close Plaintiff's shirt and then she was further sexually harassed when in response to her requests to be clothed she was stripped naked, thrown in a shower and further pepper sprayed.

90. Disturbingly, nearly all this harassment was at the hands of male officers.

91. As a proximate result of the defendants' LAD violations Plaintiff suffered damages.

## SIXTH COUNT

### Respondent Superior
### (Applicable Only to Tort Claims)

92. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93. Where applicable under the relevant case law, and the New Jersey Tort Claims Act, and as to be determined, certain of the aforementioned acts and/or omissions of the employees of the NJDOC may result in liability under the doctrine of Respondent Superior.

94. As a result, the NJDOC bears responsibility for the acts and/or omissions of its employees and agents where properly cognizable under the relevant laws and statutes.

## SEVENTH COUNT

### Assault & Battery

95. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

96. Defendants intentionally and unlawfully touched Plaintiff without permission and/or legitimate justification or cause on multiple occasions.

97. Plaintiff suffered injury, harm, damage and loss as a result of said improper contact.

98. Said contact was made with malicious and wanton disregard for Plaintiff's rights and sensitivities and with an intent or foreseeability of harmful consequences.

99. Alternatively, Defendants were negligent in how they handled Plaintiff, and breached their duty to Plaintiff by harming him and causing him to suffer substantial injuries.

100. Defendants breached their duty to Plaintiff by using unreasonable and unwarranted force.

## EIGHTH COUNT

### Negligence

101. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102. Defendants had a duty to protect Plaintiff from the injury and Constitutional violations that she suffered as established herein.

103. Defendants breached their duty by pepper spraying, beating, sexually harassing Plaintiff as well as their conduct to cover up the illicit conduct causing Plaintiff physical and emotional harm.

104. Defendants' actions, as more fully described herein, were per se negligent.

105. Defendants' breach of that duty is the proximate cause of Plaintiff's injury and damages.

## NINTH COUNT

### Intentional & Negligent Infliction of Emotional Distress

106. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

107. Defendants inflicted an immense amount of pain and suffering upon Plaintiff through their outrageous conduct.

108. Defendants' conduct shocks the conscience as it was unwarranted, unnecessary, excessive, and without any justification or provocation and is the proximate cause of Plaintiff's injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiff arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages as to the individual defendants only;

(c) interest, both pre-judgment and post-judgment;

(d) attorney's fees;

(e) costs;

(g) and all such other relief as this court may deem appropriate, equitable, and just.

## JURY DEMAND

Plaintiff demands a trial by jury in this action for all issues triable by a jury.

## DESIGNATION OF TRIAL COUNSEL

Joel Silberman, Esq. and Aymen Aboushi, Esq. are hereby designated as trial counsel.

## CERTIFICATION PURSUANT TO L.CIV.R.11.2

I certify that the matter in controversy is not the subject of any other action pending or contemplated. I further certify that I am aware of no other parties who should be joined in this matter.

DATED: December 20, 2021

Respectfully submitted,

BY: *s/ Joel Silberman*
JOEL SILBERMAN, ESQ.
26 Journal Square, 300
Jersey City, NJ 07306
Tel. (201) 420-1913
Fax (201) 420-1914

BY: *s/ Aymen Aboushi*
AYMEN A. ABOUSHI, ESQ.
1441 Broadway, 5th Floor
New York, NY 10018
Tel. (212) 391-8500
Fax (212) 391-8508